NEWMAN, Circuit Judge, dissenting. I respectfully dissent. The Kenoyer reference describes the same invention that is claimed-in claims 6 and 69, the only claims of Biscotti’s ’182 patent that are reviewed by the court. These claims recite no new components or functions or technology; they directly read on, and are anticipated by, the prior art system described in the Kenoyer reference. As I shall illustrate, every claim clause is shown in Kenoyer. Every claim component was previously known, and performs the- same function in the same way in the same combination. The- claims at issue are “anticipated,” under the most rigorous application of the law of anticipation. ' The claims on appeal recite no distinction from the Kenoyer videoconferencing system, as to any component or function or arrangement. Microsoft states, without contradiction from either Biscotti or the court: The ’182 patent neither describes nor claims any new' components, software, programming steps, or anything else not found in existing systems. Nor does it describe or claim any arrangement or configuration of components or function-alities that reduces the size, complexity, or cost, or improves the quality, of existing videoconferencing systems. Microsoft Br. 13. My colleagues on this panel search for distinctions that are neither described nor claimed, contrary to the law of anticipation. Kenoyer teaches the same conferencing system as in the ’182 patent Claim 6 is the broadest claim for the ’182 patent’s conferencing system, in which known audio arid video components provide inputs to a computer that receives and stores and transmits the information to participants in the conference. Kenoyer describes the same system, and shows the same components combined in the same way. As stated in Kennametal, Inc. v. Ingersoll Cutting Tool Co., 780 F.3d 1376, 1381 (Fed. Cir. 2015), a reference anticipates a claim if it discloses all the claimed limitations “arranged or combined in the same way as in the claim,” quoting Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 683 F.3d 1366, 1361 (Fed. Cir. 2012). The 182 patent states that it achieves improved “reliability,” but Biscotti does not dispute that any such improvement is due to known improvement in the known audio and video components—for example, improved cameras and microphones. No improvement by Biscotti is described in the 182 patent or included in the 182 claims. The 182 claims are broadly stated, whereas the court’s analysis is directed to aspects that are not limitations to the claims. Following is a clause-by-clause review of claim 6, the only system claim discussed by the panel majority, (bracketed numbers added): 6. [1] A video communication system, comprising: [2] a first video communication device, comprising: [3] a video input interface to receive video input from a set-top box; [4] an audio input interface to receive audio input from the set-top box; [5] a video output interface to provide video output to a video display device; [6] an audio output interface to provide audio output to an audio receiver; [7] a video capture device to capture video; [8] an audio capture device to capture audio; [9] a network interface; [10] at least one processor; and [11] a storage medium in communication with the at least one processor, the storage medium having encoded thereon a set of instructions executable by the at least one processor to control operation of the first video communication device, the set of instructions comprising: [i] instructions for controlling the video capture device to capture a captured video stream; [ii] instructions for controlling the audio capture device to capture a captured audio stream; [iii] instructions for encoding the captured video stream and the captured audio stream to produce a series of data packets; and [iv] instructions for' transmitting the series of data packets on the network interface for reception by a second video communication device. Claim clause [1] Clause [1] is an introductory clause, and its statement of “a video communication system” matches the Kenoyer patent’s title of “Integrated Videoconferencing System.” The ’182 patent recognizes that such systems were previously known, and criticizes current products as expensive professional-grade systems, and error-prone systems based on a personal computer with far from optimal call quality. The 182 patent criticizes the cost of video phones and their small screens, and thus “fail[ure] to provide an inclusive family video calling experience.” 182 patent, col. 1,1. 46-col. 2,1. 6. The Kenoyer reference was not cited in the PTO examination of the 182 patent. Kenoyer describes the same audiovideo conferencing system in the same terms as in the 182 patent: Videoconferencing may be used to allow two or more participants at remote locations to communicate using both video and audio. Each participant location may include a videoconferencing system for video/audio communication with other participants. Each videoconferencing system may include a camera and microphone to collect video and audio from a first or local participant to send to another (remote) participant.... Each videoconferencing system may also be coupled to a computer system to allow additional functionality into the video-conference .... Kenoyer, col. 1, 11. 25-36. This recitation itself anticipates claim 6, for claim 6 is written in broad terms, and does not limit these components and their functions. Figure 1 of Kenoyer is described as follows: Videoconferencing system 100 comprises a plurality of participant locations or endpoints. FIG. 1 illustrates an exemplary embodiment of a videoconferencing system 100 which may include a network 101, endpoints 103A-103H (e.g., audio and/or videoconferencing systems), gateways 130A-130B, a service provider 108 (e.g., a multipoint control unit (MCU)), a public switched telephone network (PSTN) 120, conference units 105A-105D, and plain old telephone system (POTS) telephones 106A-106B. Endpoints 103C and 103D-103H may be coupled to network 101 via gateways 130A and 130B, respectively.... Kenoyer, col. 3,1, 63-col. 4, 1. 6. All of the elements of claim 6 are in Kenoyer’s Figure 1, performing the same function and in the same breadth as in claim 6. [[Image here]] The system depicted in the Kenoyer Figures and description anticipates claim 6, for the elements of claim 6 match the elements in the Kenoyer reference. Claim clause [2] It is not disputed that Kenoyer shows what the ’182 patent calls a “first video communication device.” Kenoyer recites “various video devices” such as “monitors, projectors, displays, televisions, video output devices, video input devices, cameras, etc.,” col. 4, 11. 44-46, and discusses the video function and known video devices that perform this function. For example, Kenoyer states: In some embodiments, the participant location may include a camera 204 (e.g., an HD [high definition] camera) for acquiring images (e.g., of participant 214) of the participant location. Other cameras are also contemplated. The participant location may also include a display 201 (e.g., an HDTV display). Images acquired by the camera 204 may be displayed locally on the display 201 and may also be encoded and transmitted to other participant locations in the video-conference. Kenoyer, col. 5,11. 36-43 (referring to Figure 2). Kenoyer states that the video communication may be accompanied by “various audio devices” such as "microphones, audio input devices, speakers, audio output devices, telephones, speaker telephones, etc.” Kenoyer, col. 4,11. 41-44. The breadth of the Kenoyer disclosure is matched by the breadth of disclosure in the ’182 patent, which states that “a high-definition video camera is but one example” of a “video capture device,” and examples of an “audio capture device” are a “microphone or microphone array.” ’182 patent, col. 2,11. 61-66. It is not disputed that the ’182 patent clauses [1] and [2] recite no distinction from Kenoyer. Claim clauses [3] and [4] This pair of clauses includes the “set-top box,” a component of both the Kenoyer and the 182 systems. The 182 patent defines the set-top box as “any device that can provide video tuning, decryption and/or decoding functionality, especially as that functionality relates to reception of broadcast, cable, and/or satellite television signals.” 182 patent, col. 9,11.22-26. Kenoyer describes the set-top box as “e.g., a cable box, satellite box, or gaming module,” col. 1, 11. 62-63, and states that: The codec’s audio and video processing may be incorporated in the set-top box and/or may be distributed (e.g., to other devices through a cable coupling the devices to the set-top box). The set-top box may be coupled to the different components of the videoconferencing system including the camera, speakers, microphones, and display. Kenoyer, col. 1,1. 66-col. 2,1. 3. As in the 182 patent, Kenoyer describes a “video input interface” that “receive[s] video input from a set-top box,” as in clause [3]; and an “audio input interface” to “receive audio input from a set-top box,” as in clause [4], These components and their functions are described in the same way in Kenoyer and the 182 patent. No distinction is shown between the set-top box as set forth in clauses [3] and [4], and the Kenoyer set-top box. Claim clauses [5] and [6] The next pair of clauses recites that the “video output interface” is provided to a “video display device,” clause [6]; and the “audio output interface” is provided to an “audio receiver,” clause [6]. The 182 patent claims these devices and functions in broad terms and describes their conduct using known components, stating, for example: Merely by way of example, the input audio interface 426 and/or output audio interface 436 may comprise a set of RCA analog jacks, a fiber optic and/or coaxial digital interface and/or the like. Similarly the input video interface 420 and/or output video interface 430 may be implemented as an analog composite, component, S-video, and/or VGA interface, and/or as a digital component interface and/or digital visual interface (“DVI”).... 182 patent, col. 10, 11. 24-31 (referring to Figure 4). Kenoyer too provides a broad teaching of audio and video inputs and outputs. For example,-discussing the video display, Ke-noyer states: . The videoconferencing system may support HD [high-definition] capabilities. The term “high resolution” includes displays with resolution of 1280 x 720 pixels and higher. In one embodiment, high-definition resolution may comprise 1280 x 720 progressive scans ... [t]hus, an embodimént of the present invention may comprise a videoconferencing system with HD “e.g. similar to HDTV” display capabilities using network infrastructures with bandwidths T1 capability or less. Kenoyer, col. 5, 11. 17-26. Kenoyer also recites the computer connections, and the codec interface and coupling, for the video display output: The codec 309 may also place an interface on part of the computer system display output.- The computer system 355- may be coupled directly to the display 305 and may receive a video signal to display from the codec 309. Kenoyer, col. 9, 11. 5-8 (referring to Figures 3 and 5). Kenoyer discusses various embodiments; for example: In some embodiments, the MCVCS 300 may support dual streams for sharing PC content during a videoconference (e.g., standards based (H. 239) dual streaming for real-time collaboration in HD). Media shared through the MCVCS ■300 may include documents, presentations, and PC screens. Other media may also be shared. The MCVCS 300 may support IP [Internet Protocol] to integrated services digital network- (ISDN) -connectivity. Kenoyer, col. 9,11. 35-41 (referring to Figures 3 and 5); The ’182 patent states: The video communication device 105 of FIG. 5 also includes both HDMI [high-definition multimedia interface] input 520 and output 530 interfaces as well as a set of analog audio and video interfaces 525, 535 for input and output, respectively. The HDMI input interface 520 may be configured to receive a high-defínitiop audiovisual input from the STB [set-top box], while the HDMI output interface 530 may be configured to provide high-definition audiovisual output for display on a HDTV [high-definition television]. ’182 patent, col. 14, 11. 9-16 (referring to Figure 5). It is not disputed that Kenoyer shows components and functions within the scope of clauses [5] and [6]. Claim clauses [7] and [8] These clauses recite the ’182 system’s “video capture device,” clause [7]; and the “audio capture device,” clause [8]. The T82 patent describes these functions broadly; for example, at col. 2,-11. 61-66: The video communication device might further comprise a video capture device (of which a high-definition video camera is but one example) to capture a captured-video stream and/or an audio capture device (of which a microphone or microphone array might be examples) to capture a captured audio stream. Kenoyer too describes these functions. broadly, stating that “local video and audio may be captured,” col. 15, 11. 8-10, and “local video and audio may be processed in codec 309 for transmission- to a remote conference site,” col. 15,11. 11-12. Kenoyer states at col. 7,1. 66-col. 8,1. 4: The codec 309 may receive local signals from the.¡camera 303 and microphones 319 for transmission to a remote conference site. The codec 309 may compress signals for transmission and decompress received signals for distribution to the display 305 and/or speakers 311. It is not disputed that Kenoyer describes the same functions and components as set forth in clauses [7] and [8]. Kenoyer’s Figure 22, reproduced at Maj. Op. at 1061, shows the functions of these and the other claim clauses. The breadth of the audio and video capture and processing clauses [7] and [8] is illustrated throughout the Kenoyer disclosure. Claim clause [9] Clause [9] recites a “network interface,” described in the ’182 patent as an “integrated wireless local area network,” col. 5, 1. 34; a “personal computer 130 programmed with a chat application 135, such as SKYPE, MSN MESSENGER, and/or the like,” col. 6,11. 26-28; and “[i]n a set of embodiments, the communication server 205 communicates with the video communication devices 105 over the Internet,” col. 6,11. 51-53. Kenoyer too describes connection to networks, reciting various possible connections. Kenoyer states at col. 1, 11. 51-53: The MCVCS [multi-component videoconferencing system] may send/receive signals through a network coupled to the computer system or to one of the MCVCS components. At col. 8,11.11-14, Kenoyer states: For example, the network connection 351 may be from an IP [Internet Protocol] link 371 coupled to the computer system 355 from an external network (other types of links are also contemplated). Discussing networks and referring to Figure 1, Kenoyer states at col. 4, 11. 17-27: In some embodiments, endpoints 103A-103H, gateways 130A-130B, conference units 105C-105D, and service provider 108 may each include various wireless or wired communication devices that implement various types of communication, such as wired Ethernet, wireless Ethernet (e.g., IEEE 802.11), EEEE 802.16, paging logic, RF (radio frequency) communication logic, a modem, a digital subscriber line (DSL) device, a cable (television) modem, an ISDN [Integrated Services Digital Network] device, an ATM (asynchronous transfer mode) device, a satellite transceiver device, a parallel or serial port bus interface, and/or other type of communication device or method. Kenoyer also describes conversion to digital signals for. transmission over digital networks, at col. 5,11. 4-7: For example, communication applications may use codecs to convert an analog signal to a digital signal for transmitting over various digital networks (e.g., network 101, PSTN 120, the Internet, etc.) .... Kenoyer also describes ports for connection of signals involving video equipment and network transmission, stating, for example, at col. 9,11. 9-19: In some embodiments, ports may also be included for video output (e.g., VGA-Out 505 and Alternate Video-Out 509). These ports may be used to output the video signal from the codec 309 to the display 305. Another port(s) may be included to receive/transmit network signals (e.g., an Ethernet port such as Internet Protocol (IP) port 501). Additional ports (e.g., camera in 511, microphone-in 513, speaker-out 517, etc.) may also be used to receive/send signals to/ from various equipment coupled to the codec 309. The camera and microphone array signals may be sent to the codec 309 through one connection (e.g., alternate input 315). Again, it is not disputed that both the ’182 patent and Kenoyer describe various networks and their use to transmit audio and video information in the conferencing system to which both the ’182 patent and Kenoyer are directed. The “network” clause [9] is plainly anticipated. Claim clause [10] Clause [10] recites “at least one processor.” Both the 182 patent and Kenoyer state the use of a computer/processor programmed to manage the conferencing system. The 182 patent refers to “a dedicated video processor and/or digital signal processor (‘DSP’),” col. 9, 1. 67-col. 10, 1. 1, and states at col. 10,11.1-4: Merely by way of example, the DM365 digital media processor from TEXAS INSTRUMENTS may be used as the processor 405 in one embodiment. The 182 patent uses known computerized equipment for its known functions, and Kenoyer does the same. Kenoyer states at col. 15,11. 50-54: For example, the memory medium may store one or more programs that are executable to perform the methods described herein. The memory medium may also store operating system software, as well as other software for operation of the computer system. Kenoyer states at col. 5,11. 8-12: In various embodiments, codecs may be implemented in software, hardware, or a combination of both. Some codecs for computer video and/or audio may include MPEG, IndeoTM, and Cinepak-™, among others. Kenoyer also describes computer connections over a network, stating at col. 15, 11. 37-41: In addition, the memory medium may be located in a first computer in which the programs are executed, or may be located in a second different computer that connects to the first computer over a network, such as the Internet. Again, it is not disputed that Kenoyer shows “at least one processor,” as in clause [10]. Claim clause [11] Clause [11] recites a “storage medium” that encodes “instructions executable by the at least one processor” to operate the system. The ’182 patent describes a storage medium such as an encoded hard drive or a RAM [random access memory], e.g., at col. 3,11. 9-13: In an aspect, the video communication device also includes a storage medium (e.g., a hard drive, DRAM, flash RAM, etc.) on which is encoded (perhaps among other data) instructions executable by the processor(s) to control operation of the video communication device. Kenoyer too describes a storage medium: program instructions stored in a memory medium or carrier medium and executed by a processor. Kenoyer, col. 15, 11. 22-24. Kenoyer describes various memory and storage devices, stating at col. 15,11. 24-35: A memory medium may include any of various types of memory devices or storage devices ... a computer system memory or random access memory such. as Dynamic Random Access Memory (DRAM), Double Data Rate Random Access Memory (DDR RAM), Static Random Access Memory (SRAM), Extended Data Out Random Access Memory (EDO RAM), Rambus Random Access Memory (RAM), etc.; or a nonvolatile memory such as a magnetic media, e.g., a hard drive, or optical storage. The panel majority’s holding that Kenoyer ‘ does not describe a “storage medium” is contrary to Kenoyer’s extensive disclosure. Kenoyer anticipates the limitations of the introductory section of clause [11], as well as the four subclauses. Subclauses [i], [ii], [iii], and [iv] These subclauses elaborate on the clause [11] processor instructions. The first two subclauses recite that the first video communication device is controlled by instructions for controlling the video capture [i] and the audio capture [ii] devices. Sub-clause [iii] states that there are instructions to encode the video and audio streams to produce data packets, and sub-' clause [iv] states that instructions send the data packets to a second communications device via a network. Kenoyer too shows a programmed computer that instructs on the subject matter of subclauses [i], [ii], [iii], and [iv], showing capture of the video stream, capture of the audio stream, encoding the information,! and transmitting the data via a.network. The panel majority states that Kenoyer does not teach that its system is. run by “program instructions,” stating “that Microsoft had failed to provide ‘persuasive evidence that the disclosure would be understood by one of ordinary skill in the art to mean that the. storage medium with program instructions and the functions performed in the various embodiments are used together in Kenoyer.’” Maj. Op. at 1072. .This is contrary to the entirety of Kenoyer, for throughout Kenoyer its system is shown as controlled - by a ‘‘programmed computer. Kenoyer describes its computerized processing and transmission, stating, for example, that “local video and audio may be processed in codec 309 for transmission to a remote conference site,” col. 15,11.11-12. Kenoyer describes the encoding of signals into data packets for transmission, col, 8, 11.10-14; col. 4,1. 66-col, 5,1.12, and shows all of these operations managed by a programmed computer, including Figures depicting the system components. For example, Kenoyer Figure 7 illustrates the components and their combination for videoconferencing, managed by a set-top box in which “[t]he procéssing (e.g., audio and video processing) may be incorporated.” Kenoyer, col. 10, 11. 12-13. Ke-noyer describés Figure 7a as showing a multi-component videoconferencing system (MCVCS) where: the codec functionality may be incorporated in a set-top box 705 (e.g., a cable box). A camera 704 may be included on top of a display 701 coupled to the set-top box 705 (or placed on the set-top box 705). The processing, (e.g., audio and video processing) may be incorporated in the set-top box 705 and/or may be distributed (e.g., to other devices through a cable coupling the devices to the set-top box 705). The set-top box 705 may be coupled to the different components' of the MCVCS 700 including the camera 704, speakers 703, microphones, and display. Kenoyer, col. 10, 11. 8-18. Kenoyer also describes the ports in Figure 7b, and states that:. The set-top box 705 may include a camera port 709 (e.g., for an HD camera). The set-top box 705 may also include video ports (e.g., S-Video port 711), audio ports' (e.g., audio ports 713o-6), and cable port 715, among others. The set-top box 705 may also communicate with components in the conference through wireless communications. Col. 11,11.1-6. Kenoyer Figures 7a and 7b: [[Image here]] My colleagues misperceive the law of anticipation, for the question is whether the prior art shows the claimed subject matter—as indeed it does. It is not disputed that all of the elements of claim 6 are shown in Kenoyer, performing the same functions and combined in the same way. Kenoyer does not present “multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention,” as my colleagues propose. The claimed elements are not “somehow” combined—they are explicitly combined in Ke-noyer, to 'provide the same conferencing system as in claim 6. To anticipate, a reference need disclose no more than is claimed in the challenged invention. Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc., 586 F.3d 1376, 1382 (Fed. Cir. 2009). It is incorrect to criticize the reference for the breadth of its disclosure, when the claims at issue are comparably broad. Contrary to the law of anticipation—-for it is apparent that all of the Claim 6 clauses and subclauses are anticipated— my colleagues reason that “Microsoft fails to explain how a computer, especially the computer in Kenoyer, would receive broadcast, cable, or satellite television signals.” Maj. Op. at 1076. However, neither does Bisco.tti, explain how the computer in the T82 patent would receive broadcast, cable, or satellite television signals. Neither Biscotti nor Kenoyer purports to have invented broadcast, cable,' or satellite television signals, or to have invented the mechanism whereby a programmed computer processes audio and video signals by broadcast, cable, or satellite transmission.[1] The ’182 patent and the Kenoyer reference both treat such signals as known technology. The court states that Kenoyer teaches only “a mere catalog of separate parts,” and that Kenoyer simply “cobbled together” unrelated components “disconnected” from the videoconferencing system of the 182 patent. Maj. Op. at 1067, 1070, 1071. This ignores the entire disclosure of Kenoyer. Both Kenoyer and the 182 patent describe the same system in the same terms, reciting the various known audio and video communication devices and their use in the same videoconferencing system. The entirety of Kenoyer is directed to videoconferencing by way of an audio-video system that matches the 182 system. Kenoyer shows all of the components and functions of claim 6, in the same arrangement. Anticipation is plain.[2] The law of anticipation is clearly met, for on any view of Kenoyer, Kenoyer “sufficiently describe[d] the claimed invention to have placed the public in possession of it.” In re Donohue, 766 F.2d 531, 533 & n.7 (Fed. Cir. 1985). See generally Kennametal, 780 F.3d at 1381 (“However, a reference can anticipate a claim even if it ‘d[oes] not expressly spell out’ all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would ‘at once envisage’ the claimed arrangement or combination.” (quoting In re Petering, 301 F.2d 676, 681 (CCPA 1962))). Kenoyer shows the same components, having the same function, combined in the same way for the same purpose. Substantial evidence does not support the panel majority’s ruling that the ’182 claims are not anticipated. . The panel majority states that my criticism is unwarranted, and that the majority raised this aspect only in connection with the set-top box. Maj. Op. at 1076, n.1. This does not resolve the concern that the majority appears to hold that known technological information must be presented in full scientific detail, contrary to, e.g., Falko-Gunter Falkner v. Inglis, 448 F.3d 1357, 1368 (Fed. Cir. 2006) (the "forced recitation of known sequences ... would only add unnecessary bulk to the specification”). . Method claim 69 is based on the same specification, is subject to the same prior art, the same analysis, and the same conclusion.