NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**STORED VALUE SOLUTIONS, INC.,**
**(NOW KNOWN AS CERIDIAN STORED VALUE SOLUTIONS, INC.),**
*Plaintiff-Appellee,*

v.

**CARD ACTIVATION TECHNOLOGIES, INC.,**
*Defendant-Appellant.*

———————————

2011-1528

———————————

Appeal from the United States District Court for the District of Delaware in Case No. 09-CV-0495, Judge Kent A. Jordan.

———————————

Decided: December 10, 2012

———————————

ALAN M. FISCH, Kaye Scholer, LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief were JASON F. HOFFMAN and R. WILLIAM SIGLER.

MARK J. PETERSON, Stinson Morrison Hecker, LLP, of Omaha, Nebraska, argued for defendant-appellant. With him on the brief was NORA M. KANE. Of counsel on the

brief were MARK DANIEL ROTH, Orum & Roth, LLC, of Chicago, Illinois; and JEFFREY M. DAVIDSON, Covington & Burling, LLP, of Washington, DC. Of counsel was RODERICK R. MCKELVIE, Covington & Burling, LLP, of Washington, DC.

---

Before LOURIE and REYNA, *Circuit Judges*, and KRIEGER, *District Judge.*[*]

LOURIE, *Circuit Judge*.

Card Activation Technologies, Inc. ("CAT") appeals from the decision of the United States District Court for the District of Delaware denying CAT's motion for summary judgment of validity of U.S. Patent 6,032,859 ("the '859 patent"); granting Stored Value Solution's ("SVS") motion for partial summary judgment of invalidity of claims 20, 22–31, and 33–38 on the ground of lack of written description; and granting SVS's motion for partial summary judgment of invalidity of claims 1–3, 5–7, 9–14, and 16–19 on the ground of anticipation. *See Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, 796 F. Supp. 2d 520 (D. Del. 2011). Because the district court did not err in granting partial summary judgment on both written description and anticipation grounds, we *affirm*.

## BACKGROUND

### I. The '859 Patent

CAT owns the '859 patent, which discloses a method for completing retail point-of-sale transactions involving various debit cards. According to the specification, the purpose of the invention is to "provide an inexpensive way

---

[*] Honorable Marcia S. Krieger, United States District Court for the District of Colorado, sitting by designation.

of providing purchasing options to customers without the need for high capital investment by the retailer." *Id.* col. 1 ll. 31–33.

The '859 patent claims priority from two provisional applications filed on September 18, 1996 and December 13, 1996. It includes 38 claims, four of which are independent claims. All claims recite a method for processing debit purchase transactions including the step of entering one or more authorization codes. There are a total of three different authorization codes used in various combinations in the claims: a general authorization code, a clerk authorization code, and a customer authorization code. Claims 1, 10, 20, and 29, all of the independent claims in the patent, read as follows:

> 1. A method for processing debit purchase transactions, the method comprising the steps of:
>
> providing a counter-top terminal having telecommunications means operable with a computer, at least one keypad for data entry to the computer, a display responsive to the computer, and a card reader communicating with the computer for modifying purchasing value of a card in response to card use;
>
> entering transaction data to the computer through keypad data entry;
>
> reading a debit styled card through the card reader for providing card data to the computer;
>
> entering a customer authorization code for authorizing access to a customer data base of a host data processor;
>
> entering a clerk authorization code for initiating a debit purchase transaction;

electronically transmitting a transaction request to the host data processor through the telecommunications means of the counter-top terminal for requesting a response of approval or disapproval from the host data processor;

receiving a response from the host computer; and

displaying the response from the host data processor for the debit purchase transaction on the counter-top terminal display.

'859 patent col. 7 l. 45–col. 8 l. 4.

Claims 2–7 and 9 are directly dependent on claim 1.

10. A method for processing debit purchase transactions, the method comprising the steps of:

providing a counter-top terminal having telecommunications means operable with a computer, a keypad for data entry to the computer, an alphanumeric display responsive to the computer, and a card reader communicating with the computer;

entering transaction data for a debit purchase transaction to the computer through keypad data entry;

reading a debit styled card through the card reader for transferring card data to the computer;

entering a customer authorization code for authorizing access to a customer data base of the host data processor;

entering a clerk authorization code for initiating a debit purchase transaction;

communicating with a host data processor through the telecommunications means of the counter-top terminal for requesting authorization of the debit purchase transaction;

requesting authorization of the debit purchase transaction from the host data processor; and

receiving the authorization.

'859 patent col. 8 l. 51–col. 9 l. 7.

Claims 11–19 are dependent on claim 10.

20. A method for processing debit purchase transactions, the method comprising the steps of:

providing a counter-top terminal having telecommunications means operable with a computer, at least one keypad for data entry to the computer, a display responsive to the computer, and a card reader communicating with the computer for modifying purchasing value of a card in response to card use;

entering sales transaction data to the computer through keypad data entry by a clerk;

entering confirmation of the sales transaction data by a customer;

reading a debit styled card through the card reader for providing card data to the computer;

*entering an authorization code through the keypad for having the computer initiate communication with a host data processor*;

*entering a customer authorization code for authorizing access to a customer data base of a host processor*;

> *entering a clerk authorization code for initiating a debit purchase transaction;*

> electronically transmitting a transaction request to the host data processor through the telecommunications means of the counter-top terminal for requesting a response of approval or disapproval from the host data processor;

> receiving a response from the host computer; and

> displaying the response from the host data processor for the debit purchase transaction on the counter-top terminal display.

'859 Ex Parte Reexamination Certificate, col. 1 l. 41–col. 2 l. 4 (emphasis added).

Claims 22–28 are dependent on claim 20.

> 29. A method for processing debit purchase transactions, the method comprising the steps of:

> providing a counter-top terminal having telecommunications means operable with a computer, a keypad for data entry to the computer, an alphanumeric display responsive to the computer, and a card reader communicating with the computer;

> entering sales transaction data by a clerk for a debit purchase transaction to the computer through keypad data entry;

> entering confirmation of the sales transaction data by a customer; reading a debit styled card through the card reader for transferring card data to the computer;

*entering an authorization code through the keypad for having the computer initiate communication with a host data processor;*

*entering a customer authorization code for authorizing access to a customer data base of a host processor;*

*entering a clerk authorization code for initiating a debit purchase transaction;*

communicating with a host data processor through the telecommunications means of the counter-top terminal for requesting authorization of a debit purchase transaction;

requesting authorization of the debit purchase transaction from the host data processor; and

receiving the authorization.

'859 Ex Parte Reexamination Certificate, col. 2 ll. 14–41 (emphasis added).

Claims 30, 31, and 33–38 are dependent on claim 29.

## II. The Reexamination

On April 30, 2009, the PTO granted a request for reexamination to determine whether the subject matter of the '859 patent was patentable in light of U.S. Patent 5,278,752 ("Narita"). The Examiner rejected independent claims 20 and 29 and dependent claims 22, 25–28, 30–31, 33, and 36–38 as anticipated by Narita. However, the Examiner concluded that dependent claims 21 and 32 were patentable over Narita because Narita did not teach a method for processing debit transactions comprising entering a customer authorization code and a clerk authorization code. On June 10, 2010, in response to the rejection, CAT amended independent claims 20 and 29 and cancelled dependent claims 21 and 32. The amend-

ments to the independent claims added the steps of entering the authorization codes that had been recited in the cancelled dependent claims. The issued claims 20 and 29, and all their dependent claims, thus contained a recitation of three authorization codes, a general authorization code and a customer and clerk authorization code. Original claims 20 and 29 only recited a general authorization code. In response, the PTO determined all claims in the reexamination to be patentable and on October 5, 2010, issued reexamination certificate 6,032,859 C1.

## III. The District Court Proceedings

On July 8, 2009, SVS, a provider of custom gift card solutions for prepaid cards, filed a declaratory judgment action in the United States District Court for the District of Delaware alleging that the '859 Patent was invalid as anticipated and obvious. SVS sought declaratory judgment after letters were sent to SVS's customers asserting that gift cards sold by those customers infringed the '859 patent. District Judge Joseph Farnan assigned claim construction to a magistrate judge. The magistrate judge issued a report construing, among other terms, "debit purchase transaction" to be "a purchase transaction made using a debit styled card." *Stored Value Solutions, Inc. v. Card Activation Techs.*, No. 09-495-JJF-LPS, 2010 WL 1706941, at *8 (D. Del. Apr. 28, 2010) ("Claim Construction Report"). The magistrate judge also adopted CAT's proposed construction and defined the step of "entering a clerk authorization for initiating a debit purchase transaction" as "the clerk enters a series of numbers and / or letters, or a combination thereof, which permits the initiation of a debit purchase transaction." *Id.* at 21. The district court judge adopted the magistrate judge's claim construction recommendations in its entirety. During the pendency of the case, Judge Farnan retired and Judge Kent Jordan of the Third Circuit, sitting by designation,

took over the case and accepted Judge Farnan's claim construction of debit purchase transaction.

On December 17, 2010, the parties filed cross-motions for summary judgment on the validity of the '859 patent. After reviewing the motions for summary judgment, Judge Jordan asked for additional briefing on whether the term "purchase transaction" needed to be separately construed since the original construction of "debit purchase transaction" did not define "purchase transaction." The court recognized the need to separately construe "purchase transaction" due to disagreement between the parties "over the meaning of 'purchase transaction'" in their summary judgment motions. *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, No. 09-495-KAJ, at *1 (Feb. 28, 2011). Specifically, the court was interested in whether the claim term "purchase transaction" encompassed transactions in which a customer returned a product or voided a purchase. Additionally, the court asked for briefing on whether the amended claims were invalid for lack of adequate written description.

After briefing and an oral hearing, the district court separately construed "purchase transaction" as "a transaction with the intended effect of decreasing the purchasing value of, increasing the purchasing value of, or activating a debit styled card." *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, 796 F. Supp. 2d 520, 535 (D. Del. 2011). The court began its analysis with the claims. *Stored Value*, 796 F. Supp. 2d at 530 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)). The court found that because the term "purchase transaction" is used in every claim of the patent, "the definition of 'purchase transaction,' . . . must be broad enough to encompass the specific method recited in each and every claim." *Id.* at 530–31. The court acknowledged that the preferred embodiments describe methods which

add value to the debit-styled card and methods for activation of debit-styled cards. *Id.* at 533. Although the court recognized that the adopted definition was "somewhat different than the ordinary meaning of 'purchase,'" the court found that the intrinsic and extrinsic record supported construing the term as "a transaction with the intended effect of decreasing the purchasing value of, increasing the purchasing value of, or activating a debit styled card." *Id.* at 535.

Regarding validity, the district court found that the written description of the '859 patent did not describe the methods in amended independent claims 20 and 29 to "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the patentee] was in possession of the invention." *Id.* at 547 (quoting *Centocor Ortho Biotech v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011)). The district court analyzed each embodiment described in the specification of the '859 patent, one-by-one, and concluded that none of them taught a method requiring all three codes: the general authorization code, the clerk authorization code, and the customer authorization code. *Id.* at 543–46. The court concluded:

> [T]he written description does not contain any explanation, description, or disclosure whatsoever of a method for processing debit purchase transactions which includes the step of entering a general authorization code. Nor does it contain such disclosure of any method which includes [all] the steps of entering a clerk authorization code by a clerk, entering a customer authorization code, entering a general authorization code through a keypad, and entering sales transaction data confirmation by a customer.

*Id.* at 546. Because the district court found claims 20, 22–31, and 33–38 invalid for lack of written description, it granted summary judgment of invalidity.

Regarding anticipation, the district court found that a single reference, the MicroTrax Ltd. Electronic Payment Software, PC Electronic Payment Systems Reference Manual ("MicroTrax Manual") anticipated claims 1–3, 5–7, 9–14, and 16–19. *Id.* at 548. The manual was distributed with the MicroTrax Ltd. Electronic Payment software and bears the copyright dates of 1994 and 1995. *Id.* at 547–48. The software permitted retailers, *inter alia*, to accept payment with ATM cards to purchase goods and to return the goods. *Id.* at 548. One of the founders of MicroTrax testified by deposition that the software was installed in 30 stores in California in 1989, that it included the same transaction types in 1989 as those described in the MicroTrax Manual, and that the software was updated in 1995. *Id.* The district court concluded that the manual, supported by the testimony, qualified it as prior art under 35 U.S.C. § 102(a), printed and disseminated to the public before September 18, 1996, the earliest priority date of the '859 patent. *Id.* After concluding that the MicroTrax Manual was 102(a) prior art, the court analyzed sections of the MicroTrax Manual and determined that the Manual met each limitation of claims 1–3, 5–7, 9–14, and 16–19 and therefore granted summary judgment of invalidity based on anticipation. *Id.* at 548–58.

CAT timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Standard of Review

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1334 (Fed. Cir. 2011). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We address claim construction as a matter of law, which we review without formal deference on appeal, although we give respect to the vantage point of the district courts. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party." *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2011) (quoting *Leggett & Platt Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008)).

II. Construction of "Purchase Transaction"

CAT argues that the district court erred by construing the term "purchase transaction" after already having construed the term "debit purchase transaction." CAT argues that that construction "disagreed with the earlier holding of two judges in this same case." CAT Br. 46. That is not correct. We have held that "a district court may engage in claim construction throughout litigation,

not just in a *Markman* order" and that the court may "revisit[] and alter[] its interpretation of the claim terms as its understanding of the technology evolves." *Conoco, Inc. v. Energy & Envtl. Intern., L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). The original definition of debit purchase transaction did not include an explicit definition of the term purchase transaction, and the court did not err in concluding that such a definition was needed in order to rule on the summary judgment motions. The fact that that occurred after the *Markman* hearing did not make it incorrect.

CAT next argues that the term purchase transaction should simply include "the ordinary meaning of the term 'purchase.'" CAT Br. 48. We disagree with CAT's argument and agree with the district court. Although the plain meaning of purchase transaction would ordinarily be a transaction where an item or service is purchased, the patent itself uses purchase transaction in every claim, not only those where goods are purchased, but also including methods adding value to debit-styled cards and methods for activating debit-styled cards. As the district court correctly noted, because the term is used in every claim, the construction of the term must be broad enough to encompass every claim. The district court was thus correct in construing "purchase transaction" as "a transaction with the intended effect of decreasing the purchasing value of, increasing the purchasing value of, or activating a debit styled card."

### III. Written Description

35 U.S.C. § 112, paragraph 1, requires "a written description of the invention." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (en banc). "[I]f the claimed invention does not appear in the specification . . . the claim . . . fails regardless whether one of

skill in the art could make or use the claimed invention." *Id.* at 1348.

We will begin with a discussion whether it was proper for the district court to raise the written description issue on its own, then proceed to whether a defense based on written description was waived by SVS, and finally address the merits of the issue.

CAT argues that the district court incorrectly raised the written description issue *sua sponte*. CAT Reply Br. 26. We disagree. The district court raised the written description issue under Federal Rule of Civil Procedure 56(f), which allows the court to "grant [a motion] on grounds not raised by a party" after "giving notice and a reasonable time to respond." The Advisory Committee's Notes further explain that "[a]fter giving notice and a reasonable time to respond the court may grant summary judgment . . . on legal or factual grounds not raised by the parties; or consider summary judgment on its own." Fed. R. Civ. P. 56(f) Advisory Committee's Notes (2010). After raising the issue, the court ordered additional briefing including "opening, answering, and reply briefs" as well as oral argument. *Stored Value*, 796 F. Supp. 2d at 540. Thus, the district court properly raised a written description issue under Federal Rule of Civil Procedure 56(f).

CAT next argues that SVS waived any written description invalidity defense, asserting that 35 U.S.C. § 282(3) requires defenses involving validity or infringement to be pleaded. CAT contends that SVS failed to assert the defense in its pleadings. "Regional circuit law governs the question of wavier of a defense." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). As the district court noted, the Third Circuit's law governing waiver is based on the possible prejudicial effect of raising affirmative defenses

after the pleadings. *Stored Value*, 796 F. Supp 2d at 541 (citing *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir. 1991)).

The original complaint in this case was filed on July 8, 2009. The amendment in the reexamination proceeding was entered on June 27, 2010 and the reexamination certificate issued on October 5, 2010. Any possible invalidity defense based on insufficient written description thus did not arise until more than a year after the initial complaint was filed, as it arose when CAT amended claims 20 and 29, and hence their dependent claims, to require additional authorization codes. Although CAT argues that the amended independent claims are essentially the same as the previous dependent claims, CAT Br. 60 n.8, the amended claims include an additional limitation that was not present in the original dependent claims. That introduced a written description issue where there was none previously.

Given the circumstances, we agree with the district court that "SVS did not fail to raise the written description issue to gain a tactical advantage [and] CAT ha[d] not been prejudiced by SVS's failure to raise the issue in the original complaint." *Id.* Therefore, SVS did not waive its invalidity defense based on lack of written description by failing to assert it in their original pleadings.

Turning to the merits of the written description issue, we find that the amendment to the '859 patent caused independent claims 20 and 29 to require three separate codes: a general authorization code, a customer authorization code, and a clerk authorization code. The district court held claims 20, 22–31, and 33–38 invalid for lack of written description for failure to describe in the original patent application a method consisting of three codes. We

agree with the district court that the written description does not contain a method that includes all three codes.

CAT argues on appeal that the district court applied the wrong standard of law and that there is no requirement that a preferred embodiment show all steps of a claim. CAT relies on *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005) for the proposition that "[a] claim will not be invalidated on section 112 grounds because the embodiments of the specification do not contain examples explicitly covering the *full scope of the claim language.*" *Id.* at 1345 (emphasis added). In *LizardTech*, the patentee's claim was "directed to creating a seamless array of [image compression] coefficients generally." *Id.* The patentee's specification, however, was "directed at describing a particular method for creating a seamless [array], . . ." *Id.* Thus, we held the claim invalid due to inadequate written description. *Id.* Although we held the claim invalid, we recognized that patentees need not spell out "every detail of the invention in the specification." *Id.*

However, the claim in this case is different from that in *LizardTech*. Here, the question is not the scope of CAT's claims, but whether the specification showed that the inventors were in possession of the invention claimed in the newly amended claims 20 and 29. Although the patentee need not "spell out every detail of the invention," *Id.*, the possession requirement of 35 U.S.C. § 112, ¶1 demands that the written description "show that the inventor actually invented the invention claimed." *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Here, there is no method in the specification that recites all three steps. Each authorization code is an important claim limitation, and the presence of multiple authorization codes in claims 20 and 29 was essential to those claims surviving reexamination.

As dependent claims 22–28, 30–31, and 33–38 are similarly affected, they must fall as well. Thus, the district court did not err in holding claims 20, 22–31, and 33–38 invalid due to an inadequate written description of the amended claims.

## IV. Anticipation

35 U.S.C. § 102(a) provides that "[a] person shall be entitled to a patent unless . . . the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent; . . ." To be anticipatory, a reference must describe, either expressly or inherently, each and every claim limitation and enable one of skill in the art to practice an embodiment of the claimed invention without undue experimentation. *In re Gleave,* 560 F.3d 1331, 1334 (Fed. Cir. 2009).

CAT first argues that the MicroTrax Manual is not prior art under 35 U.S.C. § 102(a). CAT argues that SVS failed to meet its burden to establish that the MicroTrax Manual was both printed and published prior to the priority date of the '859 patent. CAT further argues that the MicroTrax Manual was not prior art because an earlier version of the manual—Version 2—was not before the court. CAT argues that the testimony of the MicroTrax founder is also "uncorroborated oral testimony" and could not establish that the MicroTrax Manual was publicly available. We disagree.

The MicroTrax Manual before the court bears copyright dates of 1994 and 1995.[1] Either of those dates is prior to the earliest priority date of the '859 patent, Sep-

---

[1] The Manual bears a copyright date of 1995 on the inside cover and 1994 on the back. *Stored Value*, 796 F. Supp. 2d at 548.

tember 18, 1996.  That information was corroborated by the deposition testimony of one of the founders of Micro-Trax who testified that the software was installed in California and updated in 1995.  The testimony was not "uncorroborated oral testimony"; it was corroborated by the existence of the copyright dates on the MicroTrax Manual itself.  Thus, the district court correctly found that the MicroTrax Manual was § 102(a) prior art.

CAT next argues that the district court did not correctly identify certain claim limitations in the MicroTrax Manual, principally, the "clerk authorization code."  CAT argues that the "'clerk authorization code' [of its invention] must be entered on a transaction-level basis" and is "not satisfied by a code that is entered only once to enable the terminal equipment to conduct a number of transactions; . . ." CAT Br. 40.  We disagree.

The claim construction in this case contains no requirement that the authorization code be entered on every transaction; it only requires that the code be used to initiate the debit purchase transaction.  *See Claim Construction Report* at 21 (defining the step of "entering a clerk authorization code for initiating a debit purchase transaction" as "the clerk enters a series of numbers and/or letters, or a combination thereof, which permits *the initiation of a debit purchase transaction*") (emphasis added).  The MicroTrax Manual discloses that "a checker ID" is "a 1 to 9 digit number" that the checker enters and which "opens the lane equipment and allows the terminal to accept electronic payments."  The Manual further discloses that if the checker ID is accepted, "the terminal is ready to accept transactions."  Finally, the MicroTrax Manual further discloses that entering the checker ID is the first step in performing debit transactions.  Those disclosures map squarely with the construction of the "clerk authorization code."  The checker ID is used to

permit the initiation of debit purchase transactions by "allow[ing and making] the terminal [ready] to accept electronic payments." Further, as the first step in performing debit purchase transactions, it is required to "permit[] the initiation of a debit purchase transaction." Thus, the district court properly found that the checker ID meets the limitations of the "clerk authorization code" limitation.

CAT makes various other arguments in favor of reversal of the district court's judgment. We have considered all of them, but conclude that they do not justify reversal. As CAT has not argued distinctions among the various claims with respect to anticipation by the Micro-Trax Manual, all of the claims held invalid over the reference meet the same fate. We thus find that the district court did not err in finding claims 1–3, 5–7, 9–14, and 16–19 invalid due to anticipation by the MicroTrax Manual.

CONCLUSION

For the foregoing reasons, the decision of the district court is

**AFFIRMED**